IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MARK ROBERTSON #000992 | § | |
| v. | § | CIVIL ACTION NO. 9:12cv58 |
| RICK THALER, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Mark Robertson, a Death Row inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit has been assigned to the docket of the undersigned United States Magistrate Judge for entry of final judgment pursuant to 28 U.S.C. §636(c).

In his complaint and at an evidentiary hearing, Robertson says that since March of 2000, he has been denied due process because classification committee hearings are held outside of his presence. He states that the Death Row plan allows inmates to be classified as "Death Row Work Capable" (DRWC), but that since 2000, this status has been suspended for male Death Row inmates. Robertson acknowledged that the suspension of this status may have been legitimate at the time, but that the unit is now "secure enough" that the DRWC status should be reinstated.

Robertson argued that he has a right to be present at classification committee hearings, describing this right as a "state-created liberty interest" because the Death Row plan says that he is supposed to be taken before a panel. This changed in March of 2000 for the male inmates, but female Death Row prisoners are still permitted to go before panels for their classification hearings. Robertson stated that he is not allowed to go to his hearings, but instead is marked as "absent."

1

Robertson said that non-DRWC inmates have three classification levels, of which Level 3 is the lowest. He stated that there is a "big difference" between inmates classified as work-capable and those classified as non-work capable, but that since March of 2000, no male inmates at the Polunsky Unit have been classified as work capable.

Next, Robertson complained that the prison officials used to bring the Death Row inmates law books, but another prisoner destroyed some of the books. Now, he says, the prison officials will only bring photocopies of cases, but in order to get these copies, the requesting inmate has to know the exact citation of the case. He acknowledged that he could not point to any specific problems caused by this circumstance, but said that he was having problems with a court-appointed attorney so he wanted to Shepardize Strickland v. Washington, 466 U.S. 668 (1984) to research ineffective counsel claims. Robertson said that he filed a motion to have his attorney removed from the case, but the motion was denied.

Robertson stated that the Death Row officers serve food in unsanitary conditions, without gloves or hair nets. He conceded at the evidentiary hearing that the officers have stopped leaving trays in cells and started cleaning up more, and said that he wanted to dismiss this part of his lawsuit.

On July 6, 2011, Robertson said, the grievance officers would not let him exhaust a grievance about not having a case worker. He said that he used to have good rapport with the grievance officers, but then it changed. He was told that his grievance was "redundant" even though it wasn't, so he filed it again and it was rejected again. Robertson explained that he had previously filed grievances about the Death Row plan, which "might have been related" to his grievance about the case worker but was really different, so his grievance about the case worker should not have been considered redundant.

Captain Dickens, a TDCJ official also present at the evidentiary hearing, gave sworn testimony concerning prison records, policies, and procedures. Dickens said that prior to 1999, there was a classification of "Death Row work capable," and the inmates so classified worked in textiles. After some successful escapes from TDCJ, the program was suspended indefinitely.[1]

Dickens stated that he did not know about female Death Row inmates but he believed that they could still be classified as Death Row Work Capable. He stated that at the Polunsky Unit, where Robertson is housed, there was no meaningful work for the prisoners within Death Row.

Shirley Griffin, a law librarian and Access to Courts coordinator at the Polunsky Unit, testified that law books were being damaged which were very expensive, so the Access to Courts Department decided to allow only photocopies. Inmates can obtain copies if they know the cites of the cases, and the department will Shepardize cases and bring the inmate a list.

Dickens stated that the administrative segregation classification was based on behavior, so there was nothing that the inmate could really say at the hearing, and no reason for the inmate to be present. By contrast, Dickens stated that prisoners did have a right to be present at disciplinary hearings unless there was a specific reason for exclusion.

Robertson responded that although there were no jobs at the Polunsky Unit, the Death Row plan says that inmates can be work eligible even if no jobs exist, because they can be put on the waiting list. He again stated that it would give him more freedom to be classified as DRWC. Dickens said that this was true if that status existed, but that the DRWC program has been suspended.

Robertson stated that he has been asking for Shepard's citations but that the prison officials won't make copies for him. He explained that he wants to Shepardize Strickland, but the list is too long because there are thousands of cases. He stated that he should be an exception to the policy

---

[1] Death Row inmate Martin Gurule escaped in December of 1998 and was found dead a week later. A group of prisoners knows as the "Texas 7" escaped from the Connally Unit in December of 2000 and engaged in a crime spree including the murder of a police officer before being recaptured or killed.

against providing the actual books because he has enough money in his account to pay for the book if something happened to it.

Robertson went on to state that he wanted to amend his complaint to add an allegation that female Death Row inmates get "advanced privileges" in that they are able to do in-cell crafts while male inmates are not. He stated that a female Death Row inmate named Darlie Routier told him about dolls which the female prisoners had made. Captain Dickens explained that at the Polunsky Unit, there are no advanced in-cell privileges at all, for any inmates, whether on Death Row or in general population. He explained that "advanced privileges" allow inmates to get supplies from outside and sell their crafts for a profit, and that the Death Row plan gives wardens leeway not to participate.

## Legal Standards and Analysis

Robertson's first claim is that female inmates are allowed to be classified as "Death Row Work Capable" while male inmates are not. However, the mere fact that female prisoners are treated differently than male prisoners, or that female prisoners receive privileges which male prisoners do not, is not proof of an equal protection violation. In Longoria v. Dretke, 507 F.3d 898, 904 (5th Cir. 2007), the plaintiff challenged the TDCJ grooming standards in that they required him to cut his hair contrary to his religious beliefs and that they violated equal protection because female inmates were not required to cut their hair. Regarding the latter claim, the Fifth Circuit stated as follows:

> Longoria also asserts the district court erred in dismissing his equal-protection challenge to the grooming policy. He claims he was treated differently from female Native American prisoners who are not forced to cut their hair. As the district court ruled, Longoria must show the TDCJ-ID purposefully discriminated against him and that he was treated differently from similarly situated prisoners. Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001), *citing* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). The grooming policy applied to all persons incarcerated in the Robertson Unit, so there is no equal-protection denial. In any event, our court rejected an equal-protection claim based on differing grooming regulations applied to male and female inmates in Hill v. Estelle, 537 F.2d 214, 215-16 (5th Cir.1976). Therefore, Longoria's equal-protection claim is without merit.

4

Like the grooming policy at issue in Longoria, the policy regulating the availability of the DRWC program applies to all inmates incarcerated at the Polunsky Unit, so there is no denial of equal protection.

Similarly, in Simmonds v. Cockrell, 81 Fed.Appx. 488, 2003 WL 22770177 (5th Cir., November 24, 2003), the plaintiff argued that TDCJ property and storage space regulations violated his equal protection rights because female prisoners are allowed extra storage space for personal hygiene items. The Fifth Circuit rejected this contention, holding that "because Simmonds has not shown that male and female prisoners in the Texas prisons are similarly situated, the district court did not err in dismissing his equal protection claim," citing Oliver v. Scott, 276 F.3d 736, 746-47 (5th Cir. 2002).

Robertson has likewise failed to show that male and female prisoners in the Texas prisons are similarly situated. The evidence at the hearing showed that the DRWC program was suspended for male inmates after some escapes involving male inmates. This fact provides a rational basis for the suspension of the program. Furthermore, the suspension of this program applied to all of the inmates at the Polunsky Unit, the persons to whom Robertson is similarly situated, so there was no equal protection violation. Longoria, 507 F.3d at 904. His claim on this point is without merit.

The same reasoning applies to Robertson's contention that female inmates are allowed "advanced privileges" for crafts but male inmates are not. Robertson has failed to show that this circumstance amounts to an equal protection violation, because he again has not shown that male and female prisoners are similarly situated. The craft policy applies equally to all Death Row inmates at the Polunsky Unit, to whom Robertson is similarly situated; hence, Robertson has not shown an equal protection violation. Longoria, 507 F.3d at 904; *see also* Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994) (rejecting equal protection claim by female Nebraska prisoners based upon a holding that the male and female inmates "are not similarly situated for purposes of prison programs and services.") Robertson's claim on this point is without merit.

The fact that access to crafts or craft supplies is limited does not itself set out a constitutional violation. These represent privileges rather than rights, and the Fifth Circuit has held that the Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration. Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1977); *see also* Green v. McKaskle, 788 F.2d 1116, 1125 (5th Cir. 1986).

Likewise, the fact that Robertson is not eligible for classification as "Death Row Work Capable," a classification status which has been suspended for all male inmates, does not itself set out a constitutional claim. The Fifth Circuit has held that inmates do not have a protected liberty interest in their custodial classification. Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992). Neither the fact that Robertson cannot be classified as Death Row Work Capable, nor the fact that this status has been suspended for all male inmates, amount to a violation of the Constitution or laws of the United States. His claim on this point is without merit.

Robertson goes on to complain that he cannot get law books, but only copies of cases. Sharon Griffin acknowledged that this was correct, saying that other inmates had destroyed expensive books and so a decision was made to allow the Death Row inmates access only to copies. Robertson said that he wanted to research ineffective assistance of counsel to challenge his court-appointed lawyer.

Inmates have a right of access to legal materials, and prison officials cannot deny inmates access to court. Bounds v. Smith, 430 U.S. 817 (1976). However, actual injury must be shown to set out a violation of Bounds. Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish a violation of the right of access to court); *accord*, Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986).

The Supreme Court has held that Bounds does not "guarantee inmates the wherewithal to transform themselves into litigating engines." Lewis, 116 S.Ct. at 2182. In Lewis, as noted above, the Court reaffirmed the longstanding requirement that inmates claiming a violation of Bounds must

show actual injury. Lewis, 116 S.Ct. at 2180. The Court provided the following examples of "actual injury" under Bounds:

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 116 S.Ct. at 2180.

At the evidentiary hearing, Robertson acknowledged that he could not point to any specific harm he had suffered as a result of the fact that he could only get photocopies of cases. He had a court-appointed attorney, and the right of access to courts entitles a prisoner to adequate law libraries *or* adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817, 828 (1977); Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996).

In Walker v. Navarro County Jail, 995 F.2d 223, 1993 WL 210166 (5th Cir., June 8, 1993), the plaintiff sought access to the law library to prepare a defense against pending criminal charges, but the Fifth Circuit observed that counsel had been appointed and that "appointment of counsel satisfied Walker's right of access to the courts." In response to Walker's argument that his attorney was ineffective, the Fifth Circuit stated as follows:

> Walker contends that he needed access to law books because his attorney was inadequate. His remedy for ineffective assistance of counsel does not include the right to law library access in order to second-guess counsel during the course of representation. That remains for another proceeding [citing Richardson v. Fleming, 651 F.2d 366 (5th Cir. 1981)].

In the same way, Robertson's court-appointed attorney represented his right of access to court, and Robertson does not have the right of access to the law library in order to second-guess his attorney's representation of him. Although he says that a motion to remove his attorney was denied, he offers no reason to suppose that had he had greater access to the law library and could research the law on ineffective assistance, this motion would likely have been granted. Nor has Robertson shown that he should be granted a personal exemption to the policy. His claim on this point is without merit.

Robertson also complains that he is not allowed to be present for classification hearings, although the Death Row plan says that he has a right to be there. As stated above, Robertson has no constitutionally protected liberty or property interest in his classification status. Wilson, 976 F.2d at 958.

The Supreme Court has held that the States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995).

Prior to Sandin, the courts had begun focusing on the language of predicate regulations, examining whether these regulations were "mandatory" or discretionary" in order to determine whether or not a liberty interest had been created. *See, e.g.*, Hewitt v. Helms, 459 U.S. 460, 471-72 (1983); Giovanni v. Lynn, 48 F.3d 908 (5th Cir. 1995). In Sandin, however, the Supreme Court stated that rather than examining the language of the regulations, the Court stated that the operative interest involved was the nature of the deprivation. Hence, the Court specifically disapproved of the mandatory or discretionary language analysis set out in Hewitt and its progeny. Sandin, 115 S.Ct. at 2300 and n.5.

Instead, the Court held that the States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin, 115 S.Ct. at 2301.

The Supreme Court cited Vitek v. Jones, 445 U.S. 480 (1980) (transfer to mental hospital triggers Due Process Clause) and Washington v. Harper, 494 U.S. 210, 221-222 (1990) (involuntary

administration of psychotropic drugs implicates Due Process Clause), as examples of restraints which trigger the Clause of their own force, but stated that the incarceration in disciplinary segregation present in Sandin did not create the type of deprivation in which the State might have created a liberty interest. Sandin, 115 S.Ct. at 2297 n.4, 2299-300. As a result, the Court held that neither the Hawaii prison regulation at issue in Sandin nor the Due Process Clause itself afforded the inmate a protected liberty interest entitling him to the procedural protections of Wolff. Sandin, 115 S.Ct. at 2302. The Court concluded that the fact that the plaintiff in Sandin was not permitted to call witnesses at his disciplinary hearing was not sufficient to accord him relief because no protected liberty interest was at stake.

While Robertson argues that the Death Row plan gives him a "state created liberty interest" in being present for his classification hearings, this argument lacks merit under Sandin. Because Robertson did not have a protected liberty or property interest in his classification status, there was no constitutional violation in the fact that he was not allowed to be personally present at the classification hearing. *See* Randle v. Woods, 299 Fed.Appx. 466, 2008 WL 4933754 (5th Cir., November 19, 2008) (rejecting claim that inmate was not allowed to attend a classification hearing at which his classification was changed because "a change in line class status does not implicate a cognizable constitutional liberty interest," citing Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)); Aguirre v. Owens, civil action no. 6:08cv306, 2010 WL 3239292 (E.D.Tex., August 16, 2010, no appeal taken) (rejecting claim that inmate was not allowed to attend classification hearing because inmate had no liberty interest in his custodial classification, citing Sandin). Robertson's claim on this point is without merit.

Finally, Robertson complains that when he filed a grievance, it was rejected as "redundant" even though it was not. He says that "defendants are thus supporting practices that are designed to PREVENT civil action," apparently claiming that he is being denied access to court because his grievance is not being processed and he cannot exhaust his administrative remedies, as required before he can bring suit in federal court.

9

The Fifth Circuit has stated that inmates do not have a constitutionally protected liberty interest in the prison grievance procedure, including the processing of grievances. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir.2005) (stating that claim for relief regarding an alleged violation of due process rights resulting from the prison grievances procedures was frivolous); *accord*, Mahogany v. Miller, 252 Fed.Appx. 593, 2007 WL 3145020 (5th Cir., October 24, 2007) (no protected liberty interest in the processing of prisoner's administrative grievances, as required for a due process claim). The fact that Robertson's grievance was not processed as he thought appropriate does not itself set out a constitutional violation.

Nor has Robertson shown that the rejection of his grievance denied him access to court or otherwise prevented him from setting out a meritorious claim. In the grievance which Robertson complains was wrongly rejected, he complains that he has not been given a case worker since being assigned to the Polunsky Unit, and that he is "entitled" to have a case worker. No case has held that prisoners have a constitutional right to have a case worker assigned to them; as noted above, the Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration. Newman, 559 F.2d at 291; *cf.* Burke v. Allison, civil action no. 1:08cv1496, 2010 WL 3827942 (S.D.Miss., September 24, 2010, no appeal taken) (granting summary judgment against prisoner whose claims included an allegation that he had no case worker). Because such a claim would be frivolous, Robertson cannot argue that he was denied access to court by the prison officials' failure to process a grievance raising this claim. Lewis, 116 S.Ct. at 2181 n.3 (depriving a prisoner of the opportunity to file frivolous pleadings takes away nothing except the possibility of Rule 11 sanctions). Robertson's claim on this point is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any

portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Robertson's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous and for failure to state a claim under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that the Clerk shall send a copy of this Memorandum Order to the Administrator of the Three Strikes List for the Eastern District of Texas. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this 9 day of **May, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE